*Hearing Date: TBD*
*Response Deadline: TBD*

**ROSEN & ASSOCIATES, P.C.**
*Counsel to the Debtor*
 *and Debtor in Possession*
747 Third Avenue
New York, New York 10017-2803
(212) 223-1100
Sanford P. Rosen

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| In re: | |
|---|---|
| LIVE PRIMARY, LLC, | Chapter 11 |
| | Case No. 20-11612 (MG) |
| Debtor. | |

**NOTICE OF OBJECTION TO CLAIM NO. 8**
**OF PRIMARY MEMBER LLC**

PLEASE TAKE NOTICE that on January 3, 2021 Live Primary, LLC, the above-captioned debtor and debtor in possession (the "**Debtor**"), by its undersigned counsel, filed with the United States Bankruptcy Court for the Southern District of New York, the annexed *Objection to Claim No. 8 of Live Primary LLC* (the "**Objection**"), in which the Debtor seeks to disallow the claim asserted by Primary Member LLC in Claim No. 8.

PLEASE TAKE FURTHER NOTICE that a telephonic hearing, before the Honorable Martin Glenn, United States Bankruptcy Judge, United States Bankruptcy Court for the Southern District of New York, for the entry of an order granting the relief requested in the Objection (the "**Hearing**"), **will be scheduled,** and notice of the scheduled date and time of the

Hearing and the date by which responses to the Objection must be filed, will be filed and served together with a copy of the objection annexed hereto.

Dated: New York, New York
      January 3, 2021

                                            **ROSEN & ASSOCIATES, P.C.**
                                            *Counsel to the Debtor*
                                             *and Debtor in Possession*

                                            By: */s/ Sanford P. Rosen*
                                                      Sanford P. Rosen

                                            747 Third Avenue
                                            New York, New York 10017-2803
                                            (212) 223-1100

(*signature page to Notice of Objection to Claim No. 8 of Primary Member LLC*)

*Hearing Date and Time: TBD*
*Response Deadline: TBD*

**ROSEN & ASSOCIATES, P.C.**
*Counsel to the Debtor and*
 *Debtor in Possession*
747 Third Avenue
New York, NY 10017-2803
(212) 223-1100
Sanford P. Rosen, Esq.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>LIVE PRIMARY, LLC,<br><br>                            Debtor. | Chapter 11<br><br>Case No. 20-11612 (MG) |

**OBJECTION TO CLAIM NO. 8**
**OF PRIMARY MEMBER LLC**

TO THE HONORABLE MARTIN GLENN,
UNITED STATES BANKRUPTCY JUDGE:

        Live Primary, LLC, the above-captioned debtor and debtor in possession (the "**Debtor**"), through its counsel, Rosen & Associates, P.C., as and for its objection (the "**Objection**") to the claim filed by Primary Member LLC ("**PM**") and assigned Claim No. 8 on the claims' registry for this chapter 11 case, respectfully represents as follows:

**PRELIMINARY STATEMENT**

        1.      Despite PM labelling the contributions as debt, the contributions have all of the accoutrements of equity. Here, the 50% owner of the Debtor's start-up business invested over $6.4 Million without a single promissory note, without any terms or demand for repayment, accruing interest at only 1%, and payable only – if ever – upon a merger, consolidation, or sale (or

other disposition) of all or substantially all of the Debtor's assets. The over $6.4 Million is equity, even if a member tries to call it a loan.

## FACTUAL AND PROCEDURAL BACKGROUND

2. PM, a 50% member of Debtor, filed proof of claim number 8 (the "**POC**") alleging a debt of $6,436,184.00 for "Loans extended to the Debtor as per operating agreement.[1]"

3. On or about July 28, 2015, PM and the other members of the Debtor, executed an Operating Agreement (the "**Operating Agreement**"). According to the Operating Agreement, the total capital contribution for this start up business was $1,000. PM's portion was $400. Paragraph 9.2 of the Operating Agreement labeled "Loans by PM[2]" contemplated that PM would make a single "Loan" originally for $6 Million (the "**Purported Loan**") to (i) fund the establishment and operations of two shared office facilities and (ii) pay start-up expenses[3].

4. Paragraph 9.2 further provided that the Purported Loan may be memorialized by a Loan Agreement, but each tranche[4] disbursed under the Purported Loan shall be evidenced by a promissory note made by the Debtor in favor of PM[5].

5. The terms of the Purported Loan were different from the terms of a real loan. Here, the Purported Loan would accrue interest at only 1% and no payments of principal or interest would ever become due unless and until a "Liquidity Event" occurred – a merger, consolidation or sale (or other disposition) of all or substantially all of the Debtor's assets. So, absent any Liquidity Event, the Debtor could never default and the Purported Loan would never

---

[1] POC, Part 2, Question 8.
[2] PM is defined in the Operating Agreement as Primary Member, LLC, which is one of the members of Debtor.
[3] Under Paragraph 9.2, the expenses to be paid by the proceeds of the Purported Loan included but were not limited to "marketing, advertising, salaries, insurance, benefits, taxes, build-out costs, permits, licenses, professional fees, furniture, fixtures and equipment, utilities, technology and goods and services from vendors".

[4] According to the POC, PM invested over $6.4 Million in 63 separate tranches – without a single promissory note – beginning 3 weeks after the Operating Agreement was signed and continuing for more than 2 years thereafter.
[5] Debtor has no promissory notes. Apparently, neither does PM.

2

become due. Here, a Liquidity Event has never occurred. Neither the filing of this Chapter 11 case or the Debtor's Plan of Reorganization is a Liquidity Event.

6. The Purported Loan under paragraph 9.2 of the Operating Agreement for the establishment and operations of two (2) shared office facilities is the only loan authorized by the Operating Agreement. Nevertheless, PM claims to have made 14 more "Other Loans" to the Debtor totaling $569,892.81 with a claimed balance due of $81,284[6][7] as of the petition date.

7. On November 9, 2020, the Debtor filed *Debtor's Plan of Reorganization* [Doc. No. 71] (the "**Plan**") and a disclosure statement. On November 30, 2020, the Debtor filed the *First Amended Disclosure Statement Relating to Chapter 11 Plan of Reorganization for Live Primary, LLC* [Doc. No. 77] (the "**First Amended Disclosure Statement**").

8. Pursuant to the Plan, each allowed claim of an insider, as defined in Bankruptcy Code section 101(31), will be deemed to be an interest which will be cancelled on the effective date of the Plan.

9. The hearing on approval of the First Amended Disclosure Statement is scheduled to be held on January 5, 2021.

## RELIEF REQUESTED

10. The Debtor respectfully requests that this Court enter an order disallowing the POC.

---

[6] According to the POC summary page, the 14 "Other Loans" each had a 10% interest rate and were paid back to PM in various amounts at various times throughout 2018, 2019, and 2020. Payments totaling $88,000 were transferred to PM, an insider, within one year of the petition date.

[7] There is no provision in the Operating Agreement allowing PM to make any "loan" to the Debtor with an interest rate of greater than 1% or for the Debtor to make any payments to PM absent a Liquidity Event.

3

## **JURISDICTION AND VENUE**

11. This Court has jurisdiction to consider this core proceeding pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference M-431*, dated January 31, 2012 (Presca, C.J.). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## **ARGUMENT**

### A. The Purported Loan Made for the "Establishment and Operation" of Debtor is Equity or should be Recharacterized as Equity

12. Bankruptcy courts recognize the difference of substance over form when considering whether an investment is equity or debt.

> Bankruptcy courts have the power to recharacterize ostensible debt as equity. Recharacterization of debt as equity is appropriate where the circumstances show that a debt transaction was actually an equity contribution ab initio. . . . In determining whether an investment that purports to be debt should be recharacterized as equity, courts in this district balance the factors laid out by the Court of Appeals for the Sixth Circuit in In re AutoStyle Plastics, Inc., which are: (1) the names given to the instruments, if any, evidencing the indebtedness; (2) the presence or absence of a fixed maturity date and schedule of payments; (3) the presence or absence of a fixed rate of interest and interest payments; (4) the source of repayments; (5) the adequacy or inadequacy of capitalization; (6) the identity of interest between the creditor and the stockholder; (7) the security, if any, for the advances; (8) the corporation's ability to obtain financing from outside lending institutions; (9) the extent to which the advances were subordinated to the claims of outside creditors; (10) the extent to which the advances were used to acquire capital assets; and (11) the presence or absence of a sinking fund to provide repayments. The ultimate exercise in evaluating any recharacterization claim is to ascertain the intent of the parties. [*In re Sabine Oil & Gas Corp.*, 547 B.R. 503, 566 (Bankr. S.D.N.Y. 2016) (Chapman, J.) (citation, quotations, and internal punctuation omitted)].

Reviewing the *AutoStyle* factors as adopted by this Bankruptcy Court, the Purported Loan is equity, and should be treated as equity in this Chapter 11 case.

***(1) the names given to the instruments, if any, evidencing the indebtedness***

4

13.     There are no instruments.  Paragraph 9.2 made it mandatory that a promissory note be issued for each advance.  Sixty-three (63) advances were made without a single promissory note.

This factor weighs in favor of equity.

*(2) the presence or absence of a fixed maturity date and schedule of payments*

14.     The Purported Loan has no fixed maturity date. The Purported Loan has no schedule of payments.  In fact, PM bargained for never receiving its money back without a Liquidity Event that has not occurred and may never occur.  In other words, "Here is some money, and you never have to give it back unless you merge or you sell the business".  This is the voice of an owner, not a lender

This factor weighs in favor of equity.

*(3) the presence or absence of a fixed rate of interest and interest payments*

15.     Here, there is a fixed rate of interest – accruing at only one percent (1%). Both this *de minimis* rate and its nonpayment unless a Liquidity Event occurs, are not loan terms. No lender would make an unsecured advance of $6.4 Million to a startup business with any fixed maturity date.  In July 2015, when the Operating Agreement was executed, the prime rate was 3.25%,[8] which the startup business would never qualify for as a commercial borrower, let alone a rate 2.25% less than prime.

This factor weighs in favor of equity.

*(4) the source of repayments*

16.     The only source of repayment is a Liquidity Event.  No payments from operations – ever.

---

[8] http://www.fedprimerate.com/prime_rate_history-monthly.htm

5

Again, this is an owner's risk, not a lender's loan.

This factor weighs in favor of equity.

*(5) the adequacy or inadequacy of capitalization*

17. Debtor's business plan was to build out, renovate, decorate and furnish several full floors of Manhattan office space in two locations, pay for all startup expenses to get the business off the ground and then lease areas of this newly improved space to multiple parties in a shared office environment. ***To accomplish all of this, the Debtor was capitalized with a grand total of one thousand dollars ($1,000).  PM's share was $400.***

It was obvious from the Operating Agreement that $6,000,000 was needed for this start up business to get up and running.   Capitalization of only $1,000 for a business requiring $6,000,000 is massively inadequate.

This factor weighs in favor of equity.

*(6) the identity of interest between the creditor and the stockholder*

18. PM is both a member of the Debtor and the purported creditor. Additionally, the same Operating Agreement simultaneously provides PM with its membership interest and PM's ability to make "Loans" to the Debtor.

This factor weighs in favor of equity.

*(7) the security, if any, for the advances*

19. There is no security for the Purported Loan.  A real lender would not make a loan without security in the form of a security interest and/or other credit enhancements, especially for a capital-intensive startup business like the Debtor.

Accordingly, this factor weighs in favor of equity.

*(8) the corporation's ability to obtain financing from outside lending institutions*

20. This was a capital-intensive startup business in Manhattan's pricey real estate environment. When PM advanced the first $50,000 three (3) weeks after the Operating Agreement was signed, Debtor was nothing but a business plan without operational history or any real collateral. Traditional financing based upon strong collateral and/or creditworthy personal guarantors was either not available or not pursued.

This factor weighs in favor of equity.

*(9) the extent to which the advances were subordinated to the claims of outside creditors*

21. The Purported Loan was payable – if ever – only upon a Liquidity Event, which subordinated the entire $6.4 Million to other creditors. This meant that all of the real secured and unsecured creditors would continue to get paid along the way.

This factor weighs in favor of equity.

*(10) the extent to which the advances were used to acquire capital assets*

22. One thousand dollars ($1,000) in capital contributions – $400 of which came from PM – doesn't acquire very much. The initial capital assets of the Debtors were acquired through the proceeds of the Purported Loan.

This factor weighs in favor of equity.

*(11) the presence or absence of a sinking fund to provide repayments*

23. Debtor does not have a sinking fund to provide repayments.

This factor weighs in favor of equity.

24. Every *AutoStyle* factor weighs in favor of a finding that the $6.4 Million Purported Loan by PM for the Debtor's "establishment and operation" and a multitude of startup expenses was equity, not debt.

7

Calling this equity a loan is wholly inaccurate.

### B. The "Other Loans" Are not Loans and Should Be Disallowed in Their Entirety or Likewise Treated as Equity

25. Neither Paragraph 9.2 nor any other provision in the Operating Agreement allows PM to make loans to the Debtor at 10% interest nor allows the Debtor to repay these amounts.

26. Without any authority to make these loans and charge the Debtor 10% interest, these loans violate the Operating Agreement so the POC must be disallowed on that basis. Alternatively, the same *AutoStyle* factors apply to the "Other Loans" and weigh in favor of a finding that these advances are also equity.

### C. Even if PM has a Claim for Debt under the Purported Loan or the "Other Loans", Such Claim Must be Disallowed Under 11 U.S.C. §502(d)

27. If this Court weighs the *AutoStyle* factors and finds that PM has a claim for debt, rather than an interest in equity, then PM received a large §547 preference from the Debtor, which must be paid back before PM's claim can be allowed.

28. Bankruptcy Code section 502(d) provides:

Notwithstanding subsections (a) and (b) of this section, the court shall disallow any claim of any entity from which property is recoverable under section 542, 543, 550, or 553 of this title or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of this title, unless such entity or transferee has paid the amount, or turned over any such property, for which such entity or transferee is liable under section 522(i), 542, 543, 550, or 553 of this title. [11 U.S.C. § 502(d), *emphasis added*].

29. PM owns 50% of the membership interest in the Debtor. Accordingly, PM is an Insider of Debtor under 11 U.S.C. §101(31) subject to a one-year preference lookback period. 11 U.S.C. §547(b)(4)(B). According to PM's summary of "Other Loans" in its POC (page 7), PM received payments totaling $88,000 from the Debtor between July 11, 2019 and the petition date

8

of July 12, 2020. PM appears to have no defense to these preferential transfers, as PM's POC summary shows no new value going to the Debtor during the one year prior to the petition date. Likewise, these payments are not made in the ordinary course, since there are no documents to establish the terms of payment, and there is no pattern to those payments made by the Debtor to PM either prior to or during the preference period[9].

30. Accordingly, under 11 U.S.C. §502(d), unless and until PM pays the Debtor $88,000, its claim shall be disallowed.

## RESERVATION OF RIGHTS

31. The Debtor expressly reserves the right to amend, modify, or supplement this Objection, and to file additional objections to the POC.

## NOTICE

32. In accordance with Rule 3007(a) of the Federal Rules of Bankruptcy Procedure, this Objection and notice of the hearing hereon and the deadline for filing responses hereto, shall be served upon: (i) Primary Member LLC, c/o Goldberg Weprin Finkel Goldstein LLP, 1501 Broadway, 22nd Floor, New York, New York 10036, Attn.: Kevin J. Nash, Esq. and Neal M. Rosenbloom, Esq.; (ii) the Debtor; (iii) the Office of the United States Trustee, 201 Varick Street, Suite 1006, New York, NY 10014, Attn.: Shannon Scott, Esq.; (iv) counsel for the Investor Representative for the Noteholders, Schafer & Weiner, PLLC, 40950 Woodward Avenue, Ste. 100, Bloomfield Hills, MI 48304, Attn.: Daniel J. Weiner, Esq.; and (v) all persons who have filed a request for notice and service of papers in this case. The Debtor respectfully submits that such notice is sufficient and that no other notice is necessary.

---

[9] For example, during the preference period the Debtor made payments to PM on August 1, then afterwards in 28 days, 9 days, 36 days, 72 days, 19 days, 29 days, 51 days, 47 days and 34 days.

## CONCLUSION

33. The entirety of PM's POC should be disallowed for the following reasons:

1. The "Purported Loan" is equity;

2. The "Other Loans" are equity or, if not, are unauthorized loans; and

3. PM received §547 preferential transfers totaling at least $88,000 and until repaid cannot have a claim under §502(d)(if any portion of the "Purported Loan" or the "Other Loans" is found to be debt and not equity.

**WHEREFORE**, the Debtor respectfully requests that this Court enter an order disallowing the POC and grant such other and further relief as the Court may deem just and proper.

Dated: New York, New York
      January 3, 2021

 

**ROSEN & ASSOCIATES, P.C.**
*Counsel to the Debtor and Debtor*
  *in Possession*

By: */s/ Sanford P. Rosen*
      Sanford P. Rosen

747 Third Avenue
New York, New York 10017-2803
(212) 223-1100

10